CASE 84—EQUITY—APRIL 6.

# Jones' adm'r, &c., v. Commercial Bank of Ky.

APPEAL FROM M'CRACKEN COURT OF COMMON PLEAS.

1. A judgment operates as a bar to a subsequent action between the same parties only as to those matters which were in issue in the first.

2. In an action against an administrator to enforce a lien, the heirs of the decedent, who were made parties, but as against whom no personal judgment was sought, pleaded a set-off. There was a judgment against the administrator, and also a judgment for the sale of the land. *Held*—that this did not estop the heirs from pleading the statute of limitations in a subsequent action upon the same debt, seeking to make them personally liable.

3. A payment by an administrator to the husband of an heir without her knowledge or consent, and which cannot be traced to her use, is no more than a payment to a stranger, and does not create against her any liability for the debts of the intestate.

4. A partition is made of land between heirs by agreement, and a share thus allotted is sold under execution for a debt of the decedent, and bought at sheriff's sale by the heir to whom it was allotted. *Held*— that the purchaser is to be treated as if no partition had been made, and as if the sale had been made to a stranger.

5. A power of attorney, executed by the widow and heirs of decedent, empowering an agent to complete a contract made by decedent, is not revoked by a grant of administration to the widow two days thereafter, and payments to him as agent held to be good.

P. D. YEISER FOR APPELLANT, S. R. JONES.

1. Neither the E. and P. R. R. Company nor the Commercial Bank relied upon the power of attorney, nor acted with any regard to it, and the bank had no right to regard it.

2. The bank should have clearly proven Johns' agency to draw money before they can be protected by it, and the nature and extent of it. (Story on Agency, secs. 51 and 61 to 71, inclusive, secs. 72, 78, 87, 88, 89, 92, 98, 99, 100, 104; 6 Monroe, 87, 93, 580, 571; 4 Littell, 436 Story on Agency, secs. 106, 430, 413; 1 Bibb, 610; 6 Cushing, 117; Morse on Banking, 267, 272; 5 Mon., 567.)

3. The plea of limitation by the bank should not prevail. (Angell on Lim., 30, 183, 184, 186; 1 Story's Eq., 145; 2 Ib., 152; Perry on Trusts, secs. 83, 86.)

4. Appellant did not commit a devastavit. (1 J. J. Mar., 167; 4 Johnson's Chy. Rep., 619; 3 Litt., 185; 4 B. M., 309; 4 Dana, 407; 5 Dana, 40, 41, 45, 75.)

BIGGER & REID FOR APPELLANTS, J. V. GRIEF AND WIFE.

1. It was error to subject the land purchased by Mrs. Grief at sheriff's sale under execution in favor of the Commonwealth against Calhoun and others, the decedent being a defendant therein.

2. Erred in adjudging that Mrs. Jones committed a devastavit.

3. There are no pleadings attacking the conveyance by the sheriff of McCracken county to Isabella Grief and others.

Q. Q. QUIGLEY AND A. DUVALL FOR APPELLEE, THE COMMERCIAL BANK OF KENTUCKY.

1. The taking out of letters of administration did not have the effect of annulling the power of attorney to Johns.

2. The reason of the law which does not conclude the heir by a judgment against a personal representative does not apply to this case. The heirs of Jones are as certainly concluded by the judgment against his administrator as their ancestor would have been if he had been a party to the suit.

3. The heirs (Mrs. Grief included) undertook to treat the whole property of the decedent, real and personal, as their own, and may be said to be administrators *de son tort*, and should be treated as such. The fact that Mrs. Grief mortgaged the real estate received by her, it matters not for what purpose, cannot authorize a reversal.

J. C. GILBERT, ATTORNEY FOR HELEN P. WARE UPON CROSS-APPEAL.

1. There was nothing in the pleadings nor in the evidence in this case that either justified or authorized the circuit court to set aside a judgment rendered November 14, 1877, in favor of cross-appellant against John V. Grief and wife and Johns and wife in a different action from this.

2. Their bill of review was never consolidated with this suit.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

On the 9th of February, 1872, A. S. Jones died intestate, leaving a widow, S. R. Jones, - and two daughters, his only heirs at law, Mrs. Isabella Grief, wife of J. V. Grief, and Fannie Johns, wife of John Johns. At the time of the death of A. S. Jones he had an unfinished contract with the Elizabethtown and Paducah Railroad Company to construct a portion of its road, and on the 12th of February, 1872, Mrs. S. R. Jones, Isabella Grief, J. V. Grief, Fannie Johns, and John Johns executed and acknowledged a power of attorney, authorizing John Johns to complete the contract. That power of attorney contains these provisions: "The sole object of all parties is to agree that Johns shall go on with all the stock and means and finish up the contract and work as made by Jones with said company, and do and perform all things necessary to that end, . . . . and pay all debts incident to said contract and work, and collect all dues of every kind incident to the said contract and work. . . . . We hereby give this writing for the protection of the E. & P. R. R. Co., and said company may deal and settle with John Johns in all respects concerning said contract and work the same as they would with A. S. Jones, had he lived to wind up the business; . . . . and the money deposited in the Commercial Bank at Paducah in the name of A. S. Jones, being means ensuing from work done on road, we authorize John Johns to check for same and use it in the business of doing the work on road, he to report to us in the end his actings and doings."

On the 14th of February, 1872, Mrs. S. R. Jones was appointed and qualified as administratrix of the estate of A. S. Jones, with J. V. Grief, John Johns, and Charles Brockman as sureties on her administration bond.

At the death of A. S. Jones, the Commercial Bank of Kentucky, an appellee here, held and owned by assignment three promissory notes for $800 each, executed by Jones for the purchase price of a tract of land, which notes fell due on the 2d of May, 1872, 2d of May, 1873, and 2d of May, 1874. On the 9th of August, 1876, the Bank brought suit against S. R. Jones as administratrix and as widow, and against the heirs of A. S. Jones, asking for an enforcement of its lien on the land reserved to secure the payment of these notes, and for judgment for their several amounts, with interest. To this action the administratrix, the widow and heirs answered, among other things, that, at the death of Jones, he had on deposit in the bank a sum of money more than sufficient to discharge these notes, and praying that such deposits might be set off against the claims sued on. On the 5th of November, 1877, a judgment for the amount claimed was rendered, to be levied of the personal assets in the hands of the administratrix, and a decree entered for the sale of the land to satisfy the judgment. Under this decree the land was sold, and brought $800, and an execution was issued for the remainder of the judgment, and returned unsatisfied.

On the 29th of July, 1878, this action was instituted against the administratrix, widow and heirs, and the sureties on the administration bond to recover what remained unpaid on the judgment rendered in the first action. The petition charges a *devastavit*, seeks to subject certain real estate that belonged to Jones at his death, and which, it is charged, is

now held by the widow and heirs, and asks also for personal judgment.  The material allegations of the petition are denied, the statute of limitations is interposed to so much of the claim sued on as is evidenced by the two notes falling due in 1872 and 1873, and the administratrix pleads, as a set-off, indebtedness by the bank to the estate.

The first question to be considered on the appeal is whether the administratrix is responsible for a *devastavit.*  That she is liable cannot be denied; the extent of that liability is the only important inquiry on this branch of the case.

Under the power of attorney, given two days before the grant of administration, it appears clear that Johns was empowered to continue the construction of the railroad, under the contract with Jones, and that the company, under that authority, would have been justified in making payments to him as they would have done to Jones.  Johns was authorized to pay debts, to collect moneys, to draw from the bank such sums as might be to the credit of Jones, and, in the language of the power of attorney, "said company may deal and settle with John Johns in all respects concerning said contract and work the same they would with A. S. Jones, had he lived to wind up the business."  Under this power the railroad company could unquestionably have justified payments to Johns in cash; but it is insisted that, in the first place, the grant of administration operated to revoke the power of attorney, and, in the second place, the payments made by the railroad company were by checks on the Commercial Bank, made payable to A. S. Jones, and that the name of the administratrix was signed or indorsed on the back of the checks without authority.  As to the first suggestion, we think the power of attorney was not revoked

by the grant of the letters of administration, at least not to such an extent as that it might not be ratified by the subsequent conduct of the administratrix and the heirs. The heirs, being parties to the power of attorney, were cognizant of the fact that Johns was prosecuting the work under the contract for the building of the road, as contemplated in the power of attorney, and must be conclusively presumed to have known that this could not be done without the collection of means for that purpose.    They gave to no one any notice of a revocation of authority to Johns, but, on the contrary, as shown by the settlement of the administratrix with the county court, permitted the administratrix, without objection, to receive a portion of the bonds paid the administratrix through Johns by the railroad company, and acquiesced in his conduct for more than six years after the work on the road was completed.    This is, in itself, sufficient to estop them from claiming anything as against persons who, in good faith, acted upon the supposition of authority in Johns to receive this money.

While the work on the road was progressing the Commercial Bank paid to Johns, on checks drawn as indicated, some thirty-seven thousand dollars, and on the 19th of July, 1872, the administratrix had a final settlement with the railroad company, in the presence of Johns and her daughter Fannie, at which time she received $10,758.13 in railroad bonds and $74.59 in cash, which she turned over to Johns.    The evidence of Gordon, who made the settlement for the railroad company, and of Johns is emphatic that the statement of account was shown to and explained to the administratrix, and that the statement showed the amount of work done and the payments made subsequent to the death of Jones. That Mrs. Jones says she did not understand the settlement

can avail nothing. The burden of proof was upon her to show that she did not understand it, and this she has failed to do, even if the deposition of Johns be ignored, as it is insisted should be done because his character was assailed. There is no sufficient reason why the deposition of Mrs. Johns was not taken. The failure to take it, when the burden was on the complainant, must be held to strengthen the supposition that the settlement was fully understood by all parties. The attorney of the administratrix, who appears to have acted for her in the general management of the estate and in making settlements, received from the bank in 1874, four years before this claim is asserted, a statement of the several amounts paid to Johns on checks drawn by the railroad company, and this, under the circumstances, must be taken as notice to the administratrix. We think the evidence is sufficient to show, first, authority in Johns to indorse the checks; and second, a subsequent ratification.

In addition to these sums paid to Johns on this contract by the railroad company, the administratrix, in a few days after the death of Jones, checked out of the Commercial Bank $4,832, which was there to the credit of her husband, and paid it to Johns. At the death of Jones, the teams and tools used in the construction of the railroad, the property of Jones, were sold by the administratrix to Johns, on a credit without security, and have never been paid for, the value of which appears to have been near three thousand dollars at the lowest estimate. There was also a stock of goods which was never appraised or accounted for in any way, except that Johns claims to have consumed them in payment to the employes under his charge. In addition to these items, the administratrix gave to J. V. Grief, by way of paying the supposed interest of her daughter in the

estate, about $1,450. No settlement was ever had by the administratrix with Johns, and no effort made, until long after the final settlement with the railroad company, to ascertain what sums he had paid out on account of the construction of the road. This, it appears to us, is enough to show, without going further into details, a reckless wasting of the estate such as to render the administratrix and her bondsmen responsible for the loss sustained by the creditors. That John Johns may have wrongfully appropriated large sums of money to his own use is, from the record, highly probable, but that is no defense for appellants. The evidence shows that the administratrix considered him dishonest at the time he was intrusted with the completion of the work, so that the necessity for watchfulness was manifest to her, and yet she failed to take the ordinary precaution of security for the money received by him, or to demand a speedy settlement. No amount of good faith on the part of the administratrix can excuse from loss resulting from such unparalleled negligence in handling funds held in trust by her.

The court did not err in adjudging the administratrix to be guilty of a *devastavit*, nor in dismissing the claim against the bank on account of moneys paid to Johns on the checks of the railroad company.

It is claimed for Mrs. Fannie Grief that the court below erred in subjecting the real estate held by her to the payment of the debts of the estate. The material facts bearing upon that branch of the case are: Shortly after the death of A. S. Jones, the widow and the two children, Mrs. Johns and Mrs. Grief, being of the opinion that there would be a large portion of the real estate left after paying all the debts, undertook to divide it among themselves. Subsequent to

this division, an execution was issued for a large sum of money on account of A. S. Jones' suretyship on an official bond, and under it the land that had been divided was sold for much less than the value at which it was estimated at the time of the partition, and each of the three parties purchased at the execution sale that portion that had been previously allotted to each.

Counsel for the bank insists that Mrs. Grief is liable to the extent or value of the property received in the partition, notwithstanding the fact that it was sold under execution to satisfy the debt of the estate. The property was appraised to her at $8,000, and under execution sold, at public outcry, for $1,300. If we are not mistaken as to the position of counsel, it is that the difference between these two sums is the amount for which any other property of Mrs. Grief may be subjected to pay the debts of the deceased. This position is clearly not tenable. Mrs. Grief was required to do nothing more than return the property received in the division, and having done so, in effect, by permitting the levy and sale under execution to satisfy a debt of the ancestor, she is to be treated as if no partition had ever been had, and as if the sale had been made to a stranger.

Counsel further insists, that whatever property Mrs. Grief has is liable to be subjected to the extent of the advancements made to her by the administratrix, and this appears to have been the idea upon which the court below proceeded in directing the sale of her property. We think the difficulty here is that the record fails to show that she received anything from her father's estate, except the land that was sold for debt as indicated. Some $1,450 in money and bonds of the estate was delivered to J. V. Grief, with the consent of the administratrix, but there is nothing to show

that any portion of this sum came to the hands of Mrs. Grief, or that she ever derived any benefit from it. The land directed to be sold was purchased by her at the execution sale and paid for by her with money borrowed on mortgage executed on the land purchased. So far as this record shows, the money and bonds paid to her husband were paid without her knowledge and consent, and unless it can be traced to her hands or to her use, it is no more than an unauthorized payment made to a stranger. The husband is liable for what he received, but the property of the wife cannot be subjected to the payment of his debts.

The next question to be considered is, whether the debt evidenced by the three several notes sued on in the action to enforce the lien for purchase money were, as against the heirs, merged in the judgment, or whether the notes still evidence the debt and are open to defenses by the heirs. It will be remembered that the suit upon the notes was against the administratrix, widow, and heirs, and that the heirs made defense by pleading a set-off, and that judgment was rendered determining the amount of indebtedness, and directing a sale of the land to satisfy it.

It is generally true that a judgment against an administrator is not conclusive on the heirs, because there is no privity between the personal representative and the heir. A judgment may be binding upon a person because he has had his day in court, or because he is in privity with one who has had his hearing. In this instance, the heirs were necessary parties to the suit to enforce the lien on the real estate that descended from their father, and they had the same right to make defense to the claim as they would have had if they had themselves executed the notes sued on, and the judgment as to them is as binding and conclusive, so

far as it fixes the liability of the estate, as it is upon the administratrix. In that case no personal judgment was sought against the heirs. The utmost scope of the proceeding was to determine the extent of the liability of the estate of the decedent, and to subject to the satisfaction of that claim certain real estate on which a lien existed at the death of the obligor. The question of the personal liability of the heirs, which was dependent upon the receipt of assets, was not presented for adjudication in that case, and the heirs are, therefore, not precluded from setting up, against the original cause of action, any defense to their personal liability which is not inconsistent with the liability of the estate, for in reference to those matters they have never had their day in court. So far as the assets of the estate may be reached or affected in the hands of the administratrix, the notes sued on have been merged in the judgment, making it the only evidence of the debt, behind which the administratrix cannot go, but, as to the heirs, that judgment does not absorb the original evidences of the debt in so far as the question of the personal liability of the heirs is concerned. As to the personal representative, the judgment is a complete merger, but as to the heirs, who were parties, it is only partial. This case illustrates the difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the first instance, a judgment on the merits concludes parties and privies, not only as to every matter which was offered to sustain or defeat the claim, but as to any other matter which might have been offered for that purpose; while, in the other instance, when the second action between the same parties

is upon a different claim or a demand different in its nature, the judgment in the prior action operates as an estoppel only as to those matters which were in issue, upon the determination of which the finding or verdict was rendered. (Cromwell v. County of Sac, 94 U. S., 352; Davis v. McCorkle, 14 Bush.) The case before us arises under the second classification. The contest is between the same persons who were parties to the first action, but the claim is not in every respect of the same nature. The one is to fix a general liability against the estate and specifically against a designated piece of property, and the claim is founded upon the undertaking of the ancestor, while the other is to enforce against the heirs a personal liability springing out of the receipt of assets that would otherwise have gone, when in the hands of the personal representative, to the payment of the debt. The plea of the statute of limitations to the two notes falling due in 1873 and 1874 was properly sustained.

We see no error in the order in which the judgment is made enforceable. Generally, in case of *devastavit*, the decree should direct that it be levied, first, of assets in the hands of the personal representative; second, to be levied of the property of the personal representative; third, of the sureties, and fourth, of the estate which descended to the heirs. This order, however, may be varied to suit the peculiar circumstances of the case, but in this instance the court has substantially pursued the order indicated. (Farrow v. Baker, 3 B. M., 217.)

. We see no error in the decree setting aside, on bill of review, a former judgment in favor of Helen P. Ware.

The other assignments of error by counsel for the administratrix, we think, do not affect the merits of the controversy. They do not reach the substantial rights of the

parties, and, as there are eighteen in number, we cannot stop to consider them in detail. It is sufficient to say that we have carefully considered all of them, and find no substantial errors that have not been referred to.

Wherefore, the judgment is affirmed as to S. R. Jones' administratrix and S. R. Jones, and reversed on the appeal of J. V. Grief and wife, in so far as it subjects the property bought by Mrs. Grief at sheriff's sale; and on the cross-appeal of the Commercial Bank and of Helen P. Ware the judgment is affirmed, and cause remanded, with directions for further proceedings consistent with this opinion.